## KNICKERBOCKER TRUST CO. v. GARDEN.

(Supreme Court, Appellate Division, First Department. June 15, 1906.)

1. GUARANTY—CONSTRUCTION—CONDITIONS—UNDERWRITING CONTRACT.

A contract between a construction company, a trust company, and underwriters recited that the construction company proposed to secure real estate and erect a hotel, and to authorize the issue of $7,500,000 first lien bonds, $4,500,000 of which should be reserved for retirement of a prior mortgage, and that it was desired to secure underwritings for $2,000,000 of the remaining $3,000,000 bonds. The underwriters were to be bound when $2,000,000 of such bonds were underwritten. The trust company agreed to loan money to the construction company; the underwriters guarantying repayment of the loan pro rata, the trust company to hold the bonds as collateral, and payments to the trust company by subscribers to be credited as payments on their subscription. It was agreed that the recitals were made by the construction company and the underwriters, the trust company "not to be responsible therefor." *Held*, that the underwriters were responsible under their guaranty for their pro rata share of the loan, though the construction company had not carried out the recitals as to its purposes and intentions.

2. SAME—CORPORATIONS—ISSUE OF BONDS.

A bond underwriting contract, after reciting that the bonds should be first liens, stated that "for the retirement of a certain prior mortgage" provision shall be made by reserving $4,500,000 of said consolidated mortgage bonds, and it is desired to secure underwriting for at least $2,000,000 of the "remaining $3,000,000" of the bonds. The agreement was to be binding when $2,000,000 of "such bonds" were underwritten.

*Held*, that the words "remaining $3,000,000" related to a balance of the $7,500,00 authorized, and not what was left after a specific appropriation of the other bonds to meet the mortgage.

Appeal from Special Term, New York County.

Action by the Knickerbocker Trust Company against Hugh R. Garden. From a judgment overruling a demurrer to the complaint, defendant appeals. Affirmed.

Argued before O'BRIEN, P. J., and McLAUGHLIN, PATTERSON, INGRAHAM, and HOUGHTON, JJ.

George Gordon Battle, for appellant.
Julien T. Davies, Jr., for respondent.

PATTERSON, J. The defendant demurred to the complaint in this action on the ground that it does not state facts sufficient to constitute a cause of action. The demurrer was overruled, and an appeal has been taken from the interlocutory judgment entered thereon.

It is claimed that the complaint is defective in that it fails to allege the performance of certain acts or the existence of certain conditions upon which it is insisted by the defendant his liability depends. The action is upon a written instrument dated the 10th of November, 1902, made between the Brunswick Construction Company, the Knickerbocker Trust Company (the plaintiff herein), and individual contracting parties, among whom is the defendant. It is recited in that instrument that the construction company proposes to acquire real property in the city of New York, and to construct thereon a hotel, and to authorize an issue of $7,500,000, 4½ per cent. bonds secured by a consolidated mortgage, which would be a lien upon the property to be purchased subsequent only to a first mortgage of $4,000,000, "for the retirement of which provision shall be made by reserving $4,500,000 of said consolidated mortgage bonds; and it is desired to secure underwritings for at least $2,000,000 of the remaining $3,000,000 of said consolidated mortgage bonds, and to secure a loan from the trust company." The agreement then provides that, in consideration of the premises, the individual signers "hereby severally, but not jointly, agree with the company to take and pay for, as hereinafter provided, the amount of said consolidated mortgage bonds set opposite their respective signatures hereto, or such reduced amount as shall be allotted to them as herein provided, at the price of seventy-five per cent. of their par value, together with accrued interest." The terms and conditions material at present are the following: The agreement was to be binding on the individual subscribers when the amount of at least $2,000,000 of "such bonds" shall have been underwritten by accepted underwriters, and when the trust company shall have agreed to make the loan provided for. The trust company agreed to advance to the construction company on certain terms, the amount to be paid by the underwriters, or such part thereof as should be called for from time to time by the construction company for one year from the date of the first advance. "Such advances shall be made in such amounts as are called for by the company [meaning the construction company], provided that the bonds underwritten, or interim bonds representing the same, to the amount of $1,··

000 for each $750 so advanced shall be deposited with the trust company at or prior to the time such advances are made; and the underwriters hereby authorize and direct the company, when and as such bonds are issued by it, to make delivery thereof to the trust company, to be held and disposed of by it as herein provided, and the company hereby agrees to make such delivery." "The underwriters severally, but not jointly, guaranty to the trust company the repayment of a pro rata proportion of the principal of said advances, with interest at the rate aforesaid, but payments to the trust company on account of such respective guaranties shall be applied upon the respective subscriptions hereunder; it being expressly understood and agreed that in no event shall any underwriter be called upon to pay any sum in excess of the amount set opposite his signature hereto, with interest, or, in case his underwriting shall be reduced, the amount of his accepted underwriting, with interest." It was agreed "that the recitals herein are made by the company and the underwriters, and that the trust company is not to be responsible therefor, or for any informality in, or invalidity of, said bonds or mortgage, and that no underwriter is to be released from his guaranty because of any such informality or invalidity." On the 1st of December, 1902, the agreement of November 10th was modified by providing for an advance to be made by the trust company on the underwritten subscriptions before the bonds therein underwritten should be delivered to it, and by the amendatory provision, it was mutually agreed that the trust company might, prior to the delivery to it of such bonds, advance to the construction company not more than $600,000, provided the last-named company should deposit with the trust company contracts assigned in blank for the sale of the real estate intended to be bought by the construction company, on which contracts there should have been paid at least the amount so advanced by the trust company; such contracts to be held as collateral security for such advance until the bonds were delivered, as provided.

The defendant became an underwriter for $100,000 of the issue of $2,000,000 bonds; his subscription being at the rate of 75 cents on the dollar. The amount was afterwards reduced. He failed to pay the amount of his subscription, and thereupon this action was brought to enforce his liability.

In the complaint there is set forth the making of the agreement and supplemental or modifying agreement, and the defendant's subscription to the bonds; that on the 15th of December, 1902, and at various times thereafter, the plaintiff loaned and advanced upon the securities and guaranties in the agreements provided for to the Brunswick Construction Company various sums, amounting in the aggregate to $1,687,500, payable, with interest at 6 per cent.; that the loan was evidenced and secured by the several promissory notes of the construction company, duly made and delivered to the plaintiff at or about the respective dates on which the aforesaid sums, aggregating $1,687,500, were respectively advanced; that the amount thus loaned was 75 per cent. of the amount agreed to be paid by all the underwriters under the agreements; that there had been deposited with the plaintiff at or about the time the advances were made contracts assigned in blank, as provided for in the

supplemental or modifying agreement, and also the bonds which by the main agreement were to be deposited with the trust company. It is also alleged that by the main agreement, in consideration of the making of the loan by the plaintiff to the construction company, the defendant agreed to purchase and take from said construction company the amount of bonds subscribed for by him, and guarantied to the plaintiff the repayment of his pro rata proportion of the principal of said advances made by the plaintiff to the construction company, with interest thereon; that, pursuant to the terms of the main agreement, the plaintiff reduced the amount of cash which the agreement specified the defendant would pay from $75,000 to $37,500; that the pro rata proportion of the principal of said loan to the construction company, the repayment of which was guarantied by the defendant, amounts to $28,125 of principal, upon the payment of which, with interest, the defendant is entitled to receive $37,500 par value of said bonds; that defendant has made no payments whatever on account of the bonds that he is entitled to receive under said agreements, nor on account of his said guaranty; that the plaintiff now holds, subject to the terms and conditions of defendant's said agreements, $37,500 par value of the aforesaid 4½ per cent. consolidated mortgage bonds; that, pursuant to the terms of the agreement, the plaintiff from time to time detached and collected the coupons on the bonds held by it, which had been credited on the defendant's subscription; that the repayment of the loan was duly demanded of the construction company by the plaintiff, and that the same has not been paid.

It is insisted by the defendant that the complaint is insufficient because certain conditions were contemplated in the agreements which should have been performed before he became liable upon his guaranty, and they are: First, that the construction company should have acquired the real estate; second, that it should have constructed the hotel thereupon; third, that it should place or cause to be placed thereon a first mortgage of $4,000,000; fourth, that it should have authorized an issue of $7,500,000 consolidated bonds, and that out of said bonds it should have reserved $4,500,000 to retire the first mortgage; and all that having been done, $2,000,000 of the remaining bonds should have been set aside, and that his subscription bound him only to take a proportion of bonds so specifically selected and set aside, being a part of the remaining $3,000,000 of bonds so specifically selected and set aside after the retirement of the first mortgage had been provided for.

We agree with the court below that it was not incumbent upon the plaintiff to make further allegations than those contained in the complaint to set forth a cause of action against the defendant. His guaranty is a general one. The plaintiff did not by the agreements bind itself in any way to the performance by the construction company of any of the matters contained in the recitals as being within the purposes and intention of the construction company. Those recitals are not representations or stipulations of the plaintiff. It is expressly stated in the agreement of November 10, 1902, that the recitals therein are made by the construction company and the underwriters, and that the trust company is not to be responsible therefor. The purpose of the agreements

is obvious. The underwriters or subscribers bound themselves to take a certain proportion of an issue of bonds to be made by the construction company. It became desirable that money should be realized upon these subscriptions to enable the construction company to buy the real estate and to construct the hotel; and, in order to accomplish that, the plaintiff, on the faith of the subscriptions and upon the guaranty of the underwriters, undertook to make those advances, looking in the event of the nonpayment of the advances by the borrower to the subscriptions and the guaranty of the underwriters for reimbursement. The plaintiff did not agree with the defendant that his subscription should apply only to a residue of bonds after a certain mortgage had been paid off or provided for, or that the construction company should actually accomplish any of the purposes specified in the recitals made by it in the agreement. The words "remaining $3,000,000" in the preamble of the agreement of November 10, 1902, simply relate to a balance of the $7,500,000, and not what was left after a specific appropriation of the other bonds. By the agreement of November 10th, the defendant and the other underwriters expressly authorized the construction company when and as such bonds were issued to make delivery thereof to the trust company; and it is shown by the amendatory agreement that before the delivery of the bonds the trust company was authorized to advance a certain sum of money upon the deposit of executory contracts made between the construction company and the sellers of the real estate. It is distinctly provided in the agreement of November 10th, that he trust company was not only to be responsible for any of the recitals made in that agreement, but it was also not to be responsible for any informality in or invalidity of the bonds or mortgage, and that no underwriter is to be released from his guaranty because of any such informality or invalidity.

It was not incumbent upon the plaintiff, in order to maintain its action, to make further allegations than those contained in the complaint, and the interlocutory judgment should be affirmed, with costs, with leave to the defendant to withdraw the demurrer, and answer the complaint within 20 days after the service of the order to be entered on this decision, and on payment of costs in this court and in the court below.

All concur.